WILLIAM L. THOMPSON *vs.* CHARLES W. GALLOUPE & another.

On the trial of an action to recover a sum paid for " one block or sixteenth part " of a mine, the testimony was conflicting whether the term " block " signified an interest in the property itself, or a proportion of stock in a corporation based upon the property; but it was admitted that the defendant never agreed to procure the organization of a corporation. *Held*, that the defendant had good ground of exception to the submission of the case to the jury, under an instruction which warranted a verdict for the plaintiff if they should find that it was part of the agreement, between the parties, that the defendant should procure the organization of a corporation in which the plaintiff should have stock for the money paid by him, and the defendant neglected to do so.

L., having control of the title to a mine, conveyed to G., N. and S. three undivided fourths of his interest in it; and G. and N. thereupon bargained and sold to T. a sixteenth part of the mine, with an understanding that the sale should be kept from L.'s knowledge, and that L., G. and N. were to take the title to the mine in trust for all the parties interested therein. L., G. and N. then took the title as trustees. *Held*, that the understanding between G., N. and T. was conclusive that T. was not entitled to a conveyance of his sixteenth part, vesting the title thereof in him, but only to suitable evidence of his equitable interest in the property as one of the *cestuis que trust*.

CONTRACT to recover money paid by the plaintiff to the defendants, Galloupe and Sereno D. Nickerson, " for one block or sixteenth part of the Cleaveland Mine, so called, situated in the township of Cleaveland, Canada East," alleging that, " though the plaintiff has often requested the defendants to make conveyance of said sixteenth part of said mine to him, the defendants have neglected to do so; " with a general count for money received by the defendants to the plaintiff's use. Writ dated June 14, 1867. The answer, besides a general denial of all the allegations of the declaration, alleged that, " if the plaintiff ever paid the defendants said money for said block or sixteenth part of said mine, the defendants never agreed or undertook to convey the same to the plaintiff, nor were ever bound to do so ; but, on the contrary, it was agreed, by and between the plaintiff and defendants, and other parties interested in or owning the mine, that a corporation or joint stock company should be formed for owning and managing the mine, and that the defendants should convey to such corporation or company the title and interest held by them in the mine. and should receive stock in said corporation therefor and that the plaintiff should receive

stock in such company or corporation, representing one sixteenth part of the mine; " and " the defendants have been always and still are ready to form or enter into such corporation or company, but the plaintiff has taken no measures for forming th᾽ same."

At the trial, in the superior court, before *Vose*, J., these facts appeared : " On April 4, 1864, Henry C. Lloyd, of Melbourne, in Canada, having previously acquired control of the title to the lands comprising the Cleaveland Mine, described in the declaration, conveyed to the defendants, and John Simmons, all of Boston, three undivided fourths of his interest in said lands, each having one fourth; and soon afterwards, for the purpose of forming a company to own and manage the mine, got up a subscription list in the form usual in such enterprises. The property was to cost the persons above named $9000 in gold. It was agreed by them that the property should be divided by the subscribers into sixteenths, at $2000 each, in gold; and, on this basis, Lloyd and Simmons procured subscriptions for thirty sixty-fourths of the property, (for which $15,000 in gold was received by them as trustees, who gave receipts therefor signed by the defendants, and paid $9000 for the land, and divided the remaining $6000 among the four persons named,) leaving Lloyd, Galloupe, Nickerson and Simmons equally interested in the remaining thirty-four sixty-fourths. Neither the plaintiff nor the defendants were subscribers. The subscriptions were made and the money was paid between April 4 and May 5, 1864. On the latter day, the defendants negotiated with the plaintiff, who was a mining engineer and' dealer in mining properties, for the sale of part of their remaining interest in the property, and received from him $2550 in currency, reckoned as equivalent to $1500 in gold, for which they signed and gave to him this receipt ' Boston, May 5, 1864. Received of William L. Thompson twenty-five hundred and fifty dollars in full for one block or sixteenth part of the Cleaveland Mine, so called, situated in the township of Cleaveland, Canada East.' The plaintiff, at the time of his payment, knew of the subscriptions, but there was no evidence that he knew the amount subscribed or the names of the subscribers."

" Conflicting testimony was offered as to the meaning of the term ' block ' in reference to mining properties ; Nickerson, who was familiar with dealing in such properties, and admitted to testify as an expert in relation thereto, testifying that it signified a proportion of stock in a corporation based upon such property ; and the plaintiff testifying that it signified an interest in the specific property itself.

" Evidence was introduced tending to show that the plaintiff knew of the intention to organize a company at the time he made the purchase ; but he denied knowledge of any such purpose at that time. It was admitted that there was an understanding between Nickerson and the plaintiff, at the request of the defendants, that Lloyd should know nothing of the sale to the plaintiff, and that the defendants and Lloyd were to take the deed or deeds as trustees ; and the defendants contended that this was evidence tending to show that the plaintiff knew that his name was not to be inserted in the deeds. The plaintiff testified that he supposed the title was to be taken for the subscribers or purchasers.

" On May 6, the defendants went to Canada to buy the property, and on May 9 two deeds of the lands composing the mine were given by the owners to Lloyd, Galloupe and Nickerson, as trustees for themselves and Simmons and others mentioned, being subscribers. The names of the plaintiff and two of the subscribers were not put in the deeds. Nickerson testified, that, after the registrar had written a number of names into the deed, he suggested that they might have trouble in conveying the property to the company, as by their law all the *cestuis que trust* would have to sign the deeds ; and that it was for this reason that no more names were given.

" On July 20, a proper form having been procured by Nickerson from a parliamentary agent in Canada, a notice, declaring an intention to organize a corporation according to the laws of Canada, under the name of the Cleaveland Mining Company, was signed by Nickerson, the plaintiff, and two others of the subscribers, setting forth that the amount of the capital stock was to be $500,000, divided into a hundred thousand shares, all

of which were subscribed for, and $32,000 paid in and invested in real estate. The plaintiff testified that upon the organization being perfected he expected to receive certificates of one six-teenth of the stock. The notice was never published.

" It was shown that the Cleaveland Mine adjoined the St. Francis Mine, which was being developed at the time of the purchase of the Cleaveland property, and was worked until within a year before this action was commenced. The plaintiff knew, at the time of his purchase, that the Cleaveland Mine was so situated; and that its value was based, to a great extent, upon the success of the St. Francis. After the notice referred to was signed, further action towards the organization of a cor-poration was delayed to attend the results of the work upon the St. Francis Mine, the parties interested in the Cleaveland Mine (with three or four exceptions, including the plaintiff) being stockholders in the other. The latter proved a failure. Nicker-son testified that, a few weeks after the sale to the plaintiff, he first spoke to the plaintiff of a delay in organizing the Cleave-land Mine, and he assented to it, or made no objection.

" In the fall of 1865, the plaintiff called on Nickerson and de-manded a title to the one sixteenth he had purchased, and was told that he had the same and all the title that any one else had; and Nickerson declined to give him anything different. The plaintiff testified that, for a year after the payment of the money by him, matters stood properly, so far as any delay in organizing the company was concerned. At this period, mining properties had taken a decided downward turn. There was a conversation in April 1866, between Nickerson and the plaintiff, about getting up a company, in which Nickerson told the plain-tiff to go forward and organize it, and the plaintiff replied that he had no reason to. It was admitted that, neither at the time of the plaintiff's purchase, nor ever afterwards, did either party agree to procure the organization of a company.

" On February 10, 1866, Nickerson, in reply to a request of the plaintiff for a deed, wrote a letter to him, saying: ' My impression is that the names of all the parties interested are mentioned in the conveyances. We are ready at any time to

execute any papers which the parties may agree upon, as necessary to more fully vest in them the title to the lands. I dc not think anything more is necessary.' Soon after this, and without further communication between the parties, the plaintiff went to Colorado. In April, in consequence of the plaintiff's call, Nickerson had a correspondence with Lloyd concerning the organization of a company, but no steps were taken to accomplish it. In May 1866, the defendants went to Europe. Nickerson returned January 24, 1867. On February 27 following, the plaintiff's attorney wrote to Nickerson, alluding to the defendants' receipt of May 5, 1864, and saying: 'Mr. Thompson desires me to ask you to give him a deed of his share of this Cleaveland Mine without further delay, or return his money with interest. Please inform me immediately how soon this matter can be adjusted, and whether you will make him the necessary papers to show a title to this property so far as his share is concerned or not;' to which Nickerson replied on the same day, asking for a copy of the receipt, and promising thereupon to decide immediately what the defendants ought to do in the premises, and to act immediately on the decision, in case he should find anything to be done, but adding that he considered the whole subject of no consequence. On March 2, in reply to another letter from the plaintiff's attorney, Nickerson wrote that he had written to the registrar at Melbourne in Canada for a copy of the deeds conveying the lands comprising the Cleaveland Mine, and that, as soon as he should receive it, he would prepare a deed of one sixteenth part of said lands in the name of the plaintiff. On April 18, the plaintiff's attorney again wrote to Nickerson, asking attention to the plaintiff's matters without further delay. Nickerson replied, on the same day, that he had no objection to furnishing the plaintiff with a deed of his interest in the Cleaveland Mine as soon as it could be done; but that the record copy of the deeds at the registrar's office in Canada was the only evidence of title in existence; that the registrar was dead, and no copies could be issued from his office until his affairs were further settled; that he had taken some measures to have a deed prepared by an attorney in Canada

directly from the record; that it would be needful for Galloupe to sign the deed, and he was in Europe, and it would be impossible to obtain his signature earlier than by awaiting his return in June; and that he (Nickerson) would try to have the deed ready for execution immediately on Galloupe's return, and could see nothing more which it was possible for him to do in the premises. To this letter Nickerson received no reply. A deed was prepared by an attorney in Canada, and sent to and received by Nickerson about a week before June 14, on which day the plaintiff brought this action, but was not signed on account of the absence of Galloupe, who returned from Europe June 18, nor was either the plaintiff or his attorney informed of the making of it or of its receipt by Nickerson."

At the close of the evidence, the defendants asked the judge to rule: 1. "That the first count in the plaintiff's declaration was in effect a count to recover damages for the nonperformance of a contract by the defendants to convey to the plaintiff an undivided sixteenth part of the Cleaveland Mine; and that, if the jury should find that the agreement between the plaintiff and the defendants was for the sale and purchase of an undivided interest in real estate, and that the defendants, on demand made by the plaintiff, unreasonably neglected or refused to convey such interest, or to procure the same to be made, the measure of damages was the market value of the said undivided interest at the time of such demand and refusal, and not the amount of consideration money paid for the purchase." The judge declined so to rule; but ruled "that the first count in the declaration was simply a count for money paid, and that the evidence in the case would not entitle the plaintiff to recover against the defendants under that count; that, if the plaintiff recovered at all, it would be under his second count for money had and received, and upon the ground that the consideration for which he had paid his money to the defendants had failed, and, if so, that he would be entitled to recover back the money so paid."

The defendants also requested rulings as follows: 2. "If the conveyance of the real estate was made to trustees with the knowledge and assent of the plaintiff, and with his knowledge

that his name was not to be inserted in the trust deed as one of the *cestuis que trust*, the plaintiff would not be entitled to de-mand of the defendants an absolute conveyance of one undi-vided sixteenth part of the real estate, but only such a convey-ance or declaration on the part of the defendants as would give to the plaintiff a title as *cestui que trust* under said trust deed; and if the defendants did not unreasonably delay or neglect to execute such conveyance or declaration of trust before the bring-ing of this suit, the plaintiff cannot recover;" and 3. " If the defendants, at the time the receipt was given, had a sixteenth interest in the Cleaveland Mine, or afterwards acquired such in-terest, the receipt constitutes such a declaration of trust as to make the defendants the trustees of the plaintiff."

" But the judge refused to rule according to these prayers, and instructed the jury substantially as follows:

1. " That, if the money was paid to the defendants under a mutual agreement, between them and the plaintiff, that it was to be in payment for stock in a company to be organized, and no duty rested upon the defendants to get up the company, the plaintiff must look to his stock and wait for it, and could not recover his money in this action; but if it was a part of such mutual agreement that the defendants were to go forward and procure the organization of a company in which the plaintiff was to have stock for the money so paid, and deliver the stock to him, and they neglected or failed to do so, without his assent, and failed and refused to furnish his stock, the plaintiff could recover the money he had paid, with interest, after a reasonable time for furnishing the stock had elapsed.

2 " That, if the money was paid for one sixteenth of the real estate termed in the receipt the Cleaveland Mine, and not for stock, the plaintiff was entitled to a conveyance of such interest in that real estate in some form, vesting the title thereto in him and giving him the control thereof; and if the defendants had unreasonably neglected to make or tender such a conveyance to the ᴨlaintiff upon demand by him, he could recover the money paid, with interest, after a reasonable time for making the con-veyance had elapsed."

The jury found for the plaintiff; and the defendants alleged exceptions.

*W. G. Russell*, for the defendants.

*L. Mason*, for the plaintiff.

Foster, J. 1. One branch of the first instruction given by the learned judge who presided at the trial was the following: "If it was a part of such mutual agreement that the defendants were to go forward and procure the organization of a company, in which the plaintiff was to have stock for the money so paid, and deliver the stock to him, and they neglected or failed to do so, without his assent, and failed and refused to furnish his stock, the plaintiff could recover the money he had paid, with interest, after a reasonable time for furnishing the stock had elapsed."

But the exceptions state that " it was admitted that, neither at the time of the plaintiff's purchase, nor ever after afterwards, did either party agree to procure the organization of a company." The instruction given would have been unobjectionable, if the issue which it submitted to the jury had not been precluded by this express agreement at the trial. But it is apparent that the verdict may have been rendered in total disregard of the binding and conclusive admission which has been quoted. The admission may have been intended to relate only to an express agreement to organize a corporation. But it is not so limited, either in terms or by implication ; and we are not at liberty to engraft upon it a restriction omitted by the parties. This error may have sprung from mere inadvertence ; but it would alone oblige us to grant a new trial.

2. The second instruction given must be considered in connection with the second prayer for instructions made by the defendants and refused by the court. " It was admitted that there was an understanding between Nickerson and the plaintiff, at the request of the defendants, that Lloyd should know nothing of the sale to the plaintiff, and that the defendants and Lloyd were to take the deed, or deeds, as trustees." This admission makes it certain that the plaintiff was not entitled, as the learned judge said he was, to a conveyance of his interest

in the real estate, "vesting the title thereof in him." And the implication is pretty strong, that the parties did not intend to have the name of the plaintiff inserted in the deed as a *cestui que trust.* For, as Lloyd was to be one of the trustees, this could hardly be done consistently with the mutual agreement of the parties that Lloyd was to be kept ignorant of the sale to the plaintiff. "If the money was paid for one sixteenth of the real estate termed in the receipt the Cleaveland Mine, and not for stock," then, under the circumstances stated, the plaintiff was entitled only to suitable evidence of his equitable interest in the property as one of the *cestuis que trust.* This evidence need not be a recital in the deed of trust, naming the plaintiff. Any written declaration of trust would suffice; it need not be under seal, nor in any particular form. The second prayer for instructions was therefore an accurate statement of the rule of law applicable to one aspect of the evidence, and was erroneously refused. The second instruction actually given was incorrect, for the same reasons.

Furthermore, we do not perceive that the case discloses any evidence that the plaintiff has ever demanded the only thing he was entitled to, namely, evidence of his equitable interest in the property held by the trustees. Nor do the defendants appear to have ever refused to give a further and more formal declaration of trust.

We do not find it necessary now to consider whether the receipt given to the plaintiff when he paid his money, alone, or together with the subsequent letters from Nickerson, is sufficient; or whether the defendants ought to have furnished anything more, if they had been called upon to do so. The whole trial seems to have proceeded upon an erroneous theory of the rights of the plaintiff and the obligations of the defendants.

*Exceptions sustained.*